KÁMPFE et al. v. J. R. TORREY RAZOR CO.

(Circuit Court, D. Massachusetts. January 11, 1907.)

No. 295.

PATENTS—CONSTRUCTION OF CLAIMS—SAFETY RAZOR.

The Kampfe patent, No. 672,984, for a safety razor, claim 7, although a hinge is not mentioned therein, must be limited to a razor having a hinged casing, when read in connection with the specification, which makes the hinged top a principal feature of the invention, and the drawings in all of which the hinge is shown.

In Equity. On final hearing.

R. H. E. Starr and Emery & Booth, for complainants.
William A. McLeod, for defendant.

LOWELL, Circuit Judge. This is a bill in equity to restrain the infringement of letters patent No. 672,984, issued to Frederick, Richard, and Otto Kampfe. Claim 7 is in suit, as follows:

"In a safety-razor, a blade-holding casing, substantially U-shaped in cross-section and entirely unobstructed in its interior from front to rear, and a guard formed on the front edge of its top, and an opening in the front of the casing extending entirely from end to end of the casing directly below the guard, substantially as herein shown and described."

The defendant contends that the patent is limited to hinged razors, although a hinge is not mentioned in the claim in suit. The complainant's commercial razor is hinged. The defendant's razor alleged to infringe is without a hinge. The defendant's contention is based upon the patent as a whole, which must, therefore, be examined with some care.

After naming the patentees and styling the invention "Improvements in Safety-Razors," the patent proceeds:

"The object of our invention is to provide a new and improved safety-razor, which is simple in construction, light, strong, and durable, holds the blade firmly in place and at proper adjustment in relation to the guard, and which safety-razor has its casing so constructed that the entire top can be swung up and back, so as to fully expose the guard, the under side of the top of the casing, and the upper side of the bottom of the casing, and so as to permit of readily and thoroughly removing the lather and hair and thoroughly cleaning and drying the blade-holder." (Lines 10–22.)

The next paragraph (lines 23–46) enumerates the drawings, 14 in number. All show a hinge, or necessarily imply its existence. In the next paragraph (lines 47–58) the "blade-holding casing" of the

claim in suit is described, and in both sentences the hinge is mentioned. Lines 59–62 mention "the hinged top, C." The next paragraph (lines 63–67) describes "the top, C," presumably hinged. Lines 68–72 mention "the hinged top," and otherwise refer to the hinge. The next paragraph (lines 73–88) deals altogether with the adjustment of the blade to the casing. The next paragraph (lines 89–95) mentions or refers to the hinge 5 or 6 times in its 7 lines. The next paragraph (page 1, line 96–page 2, line 33) describes the hinge and its method of locking, as shown in figures 1–4 of the drawings. The hinge is mentioned or referred to some 20 times. Lines 34–56 deal with two constructions of the hinge, shown, respectively, in figures 5, 6 and 7, and in figures 8 and 9. The hinge is mentioned or referred to some 12 times. The next paragraph (lines 57–65) describes still another form of hinge, that shown in figures 10 and 11, with 4 or 5 references to a hinge. The next paragraph (lines 66–78) shows still another form of hinge, that shown in figures 12, 13, and 14, with some 8 references to a hinge. The last paragraph of the specifications (lines 79–86) refers to the hinge twice. The nine claims of the patent, except that here in suit, all mention a hinge as an element of the combination claimed.

The patent not only mentions or refers to a hinge from 80 to 100 times, and in every part of its 2½ pages, but the intention is everywhere manifest to declare that the hinge, as described in its relation to the other parts of the machine, is the gist of the invention.

The patentee's scrivener has testified that he drew the claim in question—

"For the express purpose of covering a construction with an opening extending from end to end in the front, and with an unobstructed interior and of a U-shaped form, irrespective of whether it was in one part or two, or whether it was rigid or a hinged structure, and also regardless of whether there was a locking device of any specific form, or any form whatsoever." Record, p. 67.

The defendant objects that this evidence is inadmissible, and the complainant has suggested no reason for admitting direct evidence of intention to interpret the language of a written instrument in a case like this. Even if the evidence were admitted, however, it would be without weight. Under the stimulus of a present lawsuit, the witness was testifying about what had happened four or five years before. That he should designedly have omitted all reference in the specifications to the invention which he intended to claim is inconceivable. He does not say that he wished to involve his client in a lawsuit, and there could be no other motive for the act supposed.

The complainant relies especially upon the "opening in the front of the casing extending entirely from end to end of the casing directly below the guard" as the new element in the combination set out in claim 7. He contends that this clear opening makes it possible to clean the casing more easily, and that the removal of the old supporting strip at the side of the opening "prevented the lather from dripping down upon the hand." The second advantage is nowhere suggested in the patent, and the first is everywhere made to depend upon the hinge, as in the statement of the object of the invention above quoted. The complainant points to page 1, lines 73–78, and page 2, lines 82–86. These

extracts mention the opening, and do not mention the hinge. But the "bottom part, B," of lines 76 and 77, implies a hinge, as appears from line 49 et seq., and mention of "the hinge joint" is separated from the complainant's second quotation by only two words.

Under the circumstances, viz., the insistence upon a hinge throughout the specifications of the patent, its appearance in all the drawings, and its use in the complainant's commercial machine, a court, asked to save the claim, might well suppose that the omission of the hinge from claim 7 was an obvious error of the scrivener, and that it might be supplied from the context. If this contention is rejected, as the complainant contends, and if the claim be read precisely as it stands, then it is void for want of proper description in the patent of the invention to which the claim refers. In construing one patent by reference to the construction put upon another, the analogy is always imperfect, and often misleading; but in the case of O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 72 C. C. A. 304, the analogy seems to me to be close. There the Court of Appeals for the Eighth Circuit read a qualification into a claim in its "endeavor to find in [that] case, by a reading of both the claim and the specification, the actual invention which the patentee made and intended to claim." 140 Fed. 344, 72 C. C. A. 308.

The complainant rests an argument in favor of the validity of the patent upon the commercial success of the patented razor. But the successful razor is hinged, and, if the cause of its success does not lie considerably in its hinge, the statements of the patent are erroneous.

Bill to be dismissed, with costs.