## SEARS, ROEBUCK & CO. v. DELTA MFG. CO.

No. 5453.

Circuit Court of Appeals, Seventh Circuit.

Aug. 7, 1935.

Rehearing Denied Sept. 18, 1935.

Fred A. Parsons, of Milwaukee, Wis., and C. Paul Parker, of Chicago, Ill., for appellant.

Louis Quarles and Louis O. French, both of Milwaukee, Wis., for appellee.

Before EVANS, FITZHENRY, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree holding valid and infringed the claims sued on of appellee's Tautz patent, No. 1,790,288 (1931), and its Boice patent, No. 1,925,477 (1933), being Nos. 1, 2, 3, 4, 5, 6, 8, 12, 13, and 14 of Tautz, and 13 and 14 of Boice. Tautz says of his invention that it "relates to fences for jointers and other woodworking machines"; and the Boice patent "relates to an angle gauge which has been designed primarily for use in gauging the angle between two plane surfaces, as for example, between the table and fence of a jointer."

A jointer may be defined as a woodworking machine for trimming the edges of boards, with respect to the face, either rectangularly thereto or at such other angle as may be desired. The cutting is effected by a rapidly revolving cutterhead having thereon a plurality of knives, and extending across the table. The work is manually propelled along the table and against the knives of the revolving cutterhead, the knives projecting a short predetermined distance above the table whereon the work rests. The fence member is a guide or gauge movably set to meet at its lower edge the supporting table and capable of angular adjustment so that by holding the work upon the table and against the fence the operator may keep it in fixed relation to the cutterhead, thus effecting the desired angle. The fence is also adjustable for lateral movement across the table.

Concededly jointers and the like are very old in the art of woodworking machinery, as are likewise the cutterhead and fence as employed in such devices. It is certain specific things in their construction which are the subject of these patents, and whereof infringement is alleged.

Of Boice's 14 claims, Nos. 13 and 14,[1] which alone are in issue, are much alike. They call for a combination of two elements; a fence tiltable in either direction from the perpendicular, and a swinging stop to hold it at perpendicular when de-

---

[1] "13. In a woodworking machine, the combination with a fence, of means for mounting said fence for adjustment from a vertical position to an inwardly or an outwardly tilted position, and a stop mounted to swing at the option of the operator into or out of a position to stop the fence as the latter is moved to the vertical position.

"14. In a woodworking machine, the combination with a fence hinged to be swung in either direction from a vertical position, and a stop member arranged to stop said fence in the vertical position when desired, said stop member being hinged so that it may be swung out of fence-stopping position."

sired. The claims do not specify any particular form of such stop. It does not appear that novelty resides in either of the recited elements. A fence hinged to be swung in either direction from a vertical position is found in Loveland, No. 434,284 (1890), wherein is also shown a clamping member for holding the fence at any desired angle with the table, and in addition to the clamping bolt there is shown a locking pin designed to hold the fence at stated angles of frequent use, such as 30, 45, 60, and 90 degrees. It is true that no hinge or other device is shown for holding the pin when disengaged, but such a contrivance, if desired, could be applied with such palpable ease and simplicity that its employment would not suggest invention. We can see no patentable advance in a hinged or a swinging stop member, as appellee is pleased to call it, nor in any combination whereof such a member is an essential and distinguishing element.

The Tautz claims in issue are also combination claims, and it may be said that claim 12[2] is fairly typical of all save claims 2, 5, and 8.

Appellant contends that the Tautz combination of these claims shows nothing more than the bringing together of Loveland's fence adjustable to any angle with the plane of the table, and Sprague's bracket whereon the slidable plate at the end of the fence moves for lateral adjustment of the fence. This is in a sense true, and might seriously menace the claims if the combination did not in itself show an improved result not obvious from the prior art. Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Wahl Clipper Corp. v. Andis Clipper Co., 66 F.(2d) 162 (C. C. A. 7); Young Radiator Co. v. Moline Mfg. Co., 55 F.(2d) 545 (C. C. A. 7); New York Scaffolding Co. v. Whitney, 224 F. 452 (C. C. A. 8).

The lateral movement of Loveland's fence across the table was not brought about by the mechanism whereby its angular position with reference to the table was effected. His fence was moved laterally along transverse slides just below the surface of the table top and was set in the desired position along these slides by a thumbscrew which firmly held it there. The slides, depressed beneath the surface of the table to enable the work to be unobstructed by them, required a table opening which would readily accumulate small chips and sawdust which might obstruct the free working of the sliding mechanism as well as the movement of the work along the table. This was obviated by Tautz through the elimination of the slides and the table opening, and of the base plate to which the fence was attached and through which the thumbscrew operated. This left the table top free from any such slots or depressions therein between the opening for the cutterhead and the table front. The Sprague fence was rigidly fixed at right angles to the table top and could not be tilted either way. It was attached to a plate which slid transversely upon a bracket fixed to the front end of the table, and a set screw in the plate would firmly hold the fence to whatever position it was moved.

The sliding plate of Sprague's fence thus operating upon the bracket attached to the front of the table presented a problem different from one where the angular or tiltable movement of the fence must also be provided for. In Loveland the cross-movement was not effected from the end of the table where the operator stood and fed the work, but, as was shown, was operated by turning the thumbscrew and moving back and forth across the table the base plate which supported the fence. One of the elements of the claims is that both the lateral and the tilting operations are effected by a mechanism at the end of the table where the operator stood. This could not be brought about if Loveland and Sprague were merely combined. The advantage of effecting both operations from the front end of the table top is apparent, and in our judgment tends to show invention in Tautz.

[2] "12. In a woodworking machine, the combination of a support, a rotary cutterhead mounted on said support, a table carried on said support and having an upper work-receiving surface along which work is fed to said cutterhead, there being ways formed at the outer end portion of said table and arranged below the upper work-engaging surface of the table, said ways extending transversely of the table in parallel relation to the axis of said cutterhead, a bracket slidably mounted on said ways, means for clamping said bracket on said ways in selected positions therealong, a work-guiding fence extending longitudinally above said table and having a pivotal mounting on said bracket to swing about an axis lying substantially in the plane of said table, and means for adjustably clamping said fence to said bracket."

The Tautz combination shows still further advantage over Sprague very much as that pointed out as to Loveland. The Tautz claims call for placing of the slides for the lateral movement of the fence below the front end of the table top, thereby avoiding the tendency for sawdust and wood particles to lodge thereon, as might be the case with the slides of Sprague located at the front but not underneath the table top. In these Tautz claims the sliding mechanism is at the front but entirely under the table, and is thereby protected from such lodgment therein.

We believe that the bringing together in Tautz of Sprague and Loveland is attended with such superior advantages in Tautz that it cannot be successfully maintained that Tautz is merely an aggregation of the other two.

Claims 2 and 5 show in most respects the combination of the claims already considered, but enumerate as an additional element a lug or downward projection of the lower edge of the fence whereby the fence, for its length from the front to the lug, is held slightly above the surface of the table, so that in the lateral movement of the fence across the table only at this lug does the fence actually contact the table. The claimed advantage of this is the prevention of scratching and wearing the surface of the table, which should always be smooth for moving of the work over it. The expedient is a simple one, but appears new in Tautz and indicates some advance in the art which we cannot say is unworthy of patent protection.

Appellant insists that its machine does not show this feature, but its machine in evidence does show a slight downward projection in the lower edge of the fence next to the cutterhead and a slight space between the surface of the table and the fence forward from this downwardly projecting portion. We think appellant's machine does show the presence of this element, and that claims 2 and 5 are infringed in such of appellant's structures wherein this and other elements of the claims appear.

Claim 8 includes as an additional element a pair of cooperating lugs, one on the fence plate and one on the bracket, for stopping and holding the fence at perpendicular, so that the movement thereof may not extend forward from a right angle with the surface of the table. (Tautz does not tilt his fence forward from the perpendicular position.) We believe what we have said above respecting the swinging stop in the Boice patent is likewise applicable here. We do not believe that invention is involved in providing means for such a stoppage, and its incorporation here does not indicate any function or advantage beyond what would be present in any situation where such stop mechanism was employed. This combination claim with this indispensable but untenable element is in our judgment invalid.

Appellant contends that its machine does not have the slides under the table to provide for the lateral movement of the fence. It needs but an inspection of appellant's machine in evidence to see that that is just where these slides are—completely under the forward end of the table.

It is also contended that appellant, by single clamping device, sets and holds the mechanisms for tilting the fence and laterally moving it across the table; whereas the Tautz claims in issue show two separate devices for that purpose, one to clamp and hold the arcuate plate which tilts the fence, and the other, the sliding mechanism which moves it laterally. The claims do not describe these clamping devices beyond saying in each case "means" for effecting these several purposes. It is evident that in such a contrivance the separate devices have some advantage over the single clamp, and the latter has some advantage over the two clamps. In our judgment the employment of the single clamp does not distinguish appellant's machine from the Tautz patent. Appellant accomplished by applying the single clamp the same result which is achieved in Tautz by using the two separate clamps. With this one device appellant's machine, in this respect, responds to these two elements in Tautz. The application of appellant's clamp accomplishes, substantially in the same way, what is accomplished by the two clamps of Tautz. One does not escape infringement by providing a single element which fully responds to a plurality of elements in the patent. Lamson Co. v. G. & G. Atlas Systems, Inc., 14 F.(2d) 22 (C. C. A. 2); Pedersen v. Dundon, 220 F. 309 (C. C. A. 9); Bundy Mfg. Co. v. Detroit Time-Register Co., 94 F. 524 (C. C. A. 6).

We have considered all of the contentions which we deem of sufficient merit, with the result that we regard the two

Boice claims in issue and claim 8 of the Tautz patent invalid, and the remaining claims of the Tautz patent valid and infringed.

The decree of the District Court is reversed as to claims 13 and 14 of the Boice patent and claim 8 of the Tautz patent, and it is affirmed as to claims 1, 2, 3, 4, 5, 6, 12, 13, and 14 of the Tautz patent. The cause is remanded to the District Court to re-form the decree in accordance with these views.

Each party shall bear half the costs of the appeal.